**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA,<br><br>         Plaintiffs,<br><br>         v.<br><br>RICHARD SCOTT, in his official capacity as Governor of the State of Florida, and KEN DETZNER, in his official capacity as Secretary of State of the State of Florida,<br><br>         Defendants. | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION**
**AND ORDER TO SHOW CAUSE**

Plaintiff respectfully submits this memorandum of law in support of its emergency motion, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction and order to show cause why a preliminary injunction should not issue, requiring the State of Florida to extend the voter registration deadline from October 11 to October 18 to account for the lost days and weekend of voter registration. Plaintiff also

1

respectfully requests to be heard on this motion, at the same time that the related case of *Florida Dem. Party* v. *Scott*, No. 4:16-cv-00626, 2016 (N.D. Fla. Oct. 9, 2016) will be heard on Wednesday, October 12, 2016.

## I.    PRELIMINARY STATEMENT

Defendants should be enjoined from enforcing the October 11, 2016, voter registration deadline and should be ordered to extend the deadline to at least October 18 to account for the days of lost registration opportunities—especially the lost weekend when the majority of voter registration activity occurs.  In the absence of such relief, tens of thousands of eligible voters will be disenfranchised because of the devastating impact of Hurricane Matthew, compounded by the intentional actions of Defendants.

On October 6, Governor Scott implored more than a million Florida residents in the path of Hurricane Matthew to "[e]vacuate, evacuate, evacuate" and closed State offices in 26 counties.  Arek Sarkissian et al., *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate, Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-approach/91652096/.  "Time is running out" to escape the deadliest hurricane in a decade, the Governor

2

declared, as County and State elections offices, motor vehicle departments,

post offices, and other County and State offices shut down from Miami to

Jacksonville.  *Id.*

Time also was running out for Floridians to register to vote.  In

total, 25 counties were issued an evacuation order (mandatory or voluntary).

With October 11, 2016, then looming as the registration deadline, the means

and locations for aspiring voters to register were closed, inaccessible or out

of reach on what ordinarily are the busiest voter registration days of the year.

Residents of Florida count on the final days of the registration period to

submit their applications for the upcoming elections, especially for

presidential elections.   A significant percentage of voters register right

before the book-closing deadline.  For example, estimates in 2012 indicate

that 156,306 persons registered the last nine days of the registration period—

amounting to approximately 18 percent of new registrations.   *See* Fla. Dep't

of St., Div. of Elections, Bookclosing Reports – Regular,

http://dos.myflorida.com/media/693854/gen2012_countyparty.pdf; Voter

Registration Monthly Reports, http://dos.myflorida.com/elections/data-

statistics/voter-registration-statistics/voter-registration-monthly-reports/.

Indeed, registrations submitted in Florida in the week leading up to book

closing typically account for 13 to 20 percent of new registrations in

presidential years, according to a 2008 analysis.  *See* McDonald Decl. 5-6,

*League of Women Voters* v. *Browning*, 575 F. Supp. 2d 1298 (S.D. Fl.

2008), *available at*

 http://www.brennancenter.org/sites/default/files/legacy/Democracy/Florida

LOWVvBrowning%20-%2006-06-

08%20Expert%20Declaration%20of%20Michael %20McDonald.pdf.

This year, tens of thousands of Florida residents have been

denied the opportunity to register to vote—and thus will be deprived of their

right to vote—because of the twin disasters of Hurricane Matthew and the

resultant shutdown of all means of voter registration, including government

offices, roads, the Internet, and the postal service.   Plaintiff, the League of

Women Voters of Florida, wrote to the Governor on October 7, 2016

requesting that, in the wake of the hurricane, and given that this Monday was

Columbus Day, the registration deadline be extended at least until the end of

this week.   The Governor rejected that and similar requests, thereby

ensuring that thousands and thousands of Florida residents would be unable

to have the full opportunity to register provided them by the National Voter

Registration Act (the "NVRA").

To "ensure that any eligible applicant is registered to vote in an

election," the NVRA requires that the State give every eligible applicant the

opportunity to obtain and submit a valid voter registration form, in person or by mail, during the entire period for which registration activity normally occurs up to 30 days before the date of the election, or a later deadline provided under state law.  52 U.S.C. § 20507(a)(1).  That is the law for residents who register by submitting their applications to the State motor vehicle authority.  That is the law for residents who register by submitting their applications to State or County voter registration agencies.   And that is the law for residents who register by mailing their applications: they must be postmarked no later than 30 days before Election Day.

By denying that prescribed time and opportunity to Florida's eligible applicants, Florida violates the NVRA.  Post offices closed and postal service was suspended last week, and mail operations were not approaching normal service statewide until October 11.   With a total of 43 counties closing state and county offices on October 7, motor vehicle and elections offices were shuttered.  With all mechanisms for voter registration effectively suspended for days, aspiring voters who planned to register in person for much of last week were blocked.  Extending the voter registration deadline to make up for the days lost to Hurricane Matthew is the only way for the State of Florida to comply with the NVRA and protect the right to vote for thousands of eligible applicants.  It also is the only way for the State

to avoid violating the First Amendment and the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

## II.   STATEMENT OF FACTS

Florida law required all aspiring eligible voters seeking to vote in the November 8, 2016 general election to register by October 11, 2016. To register, these aspiring voters must complete a paper Florida Voter Registration Application and deliver it, either in person or by mail, to the office of the County Supervisor of Elections, the Florida Division of Elections, any Department of Motor Vehicles, any office that issues Florida ID cards, any military recruitment office, any public library, any office that primarily serves persons with disabilities, and/or a third-party voter registration agency by October 11, 2016.  *See* Fla. Stat. § 97.053.  In other words, to register to vote, an aspiring voter must be able to access or download a Voter Registration Application and then be able to either mail or personally deliver it to an appropriate receiving entity, all by October 11, 2016.

On October 6, 2016, Hurricane Matthew slammed into the Florida coast with 130 mile-per-hour winds.  Over two dozen counties experienced widespread power outages, flooding, road and bridge closures, and severe damage to their homes.  Governor Rick Scott ordered 1.5 million

Florida residents to evacuate from their counties of residence and relocate inland.  Governor Scott directed the state offices in 26 of Florida's 67 counties to close.  By the next day, over one million Florida residents were without power, over 500,000 were in evacuation zones, and thousands were in shelters.  Under Governor Scott's orders, state and county offices—including motor vehicle offices and other government agencies that are required by law to offer voter registration services—were closed in 43 of Florida's 67 counties.  All Board of County Commissioners offices were closed for the remainder of that week.  The United States Postal Service suspended operations in most (if not all) areas affected by Hurricane Matthew.  Arek Sarkissian et al., *Hurricane Matthew: Florida Governor Says 'Evacuate, Evacuate, Evacuate,'* USA Today (Oct. 6, 2016), http://www.usatoday.com/story/news/nation/2016/10/06/hurricane-matthew-batters-bahamas-set-strengthen-florida-approach/91652096/; J.J. Gallagher et al., *Matthew Batters Florida; 4 Dead, Over 1 Million Lose Pow*er, ABC News (Oct. 8, 2016), http://6abc.com/weather/matthew-batters-florida;-4-dead-over-1-million-lose-power-/1543621/; *Postal Service Prepping for Hurricane Matthew*, WHJG (Oct. 6, 2016), http://www.wjhg.com/content/news/Postal-service-prepping-for-Hurricane-Matthew-396212161.html; *Closings, Cancellations Due to Hurricane*

*Matthew*, WTSP (Oct. 6, 2016),

http://www.wtsp.com/news/local/florida/closings-due-to-hurricane-

matthew/329299515; *Gov. Scott Issues Updates on Hurricane Matthew*

*Preparedness and Response Efforts as Storm Impacts Florida*, Rick Scott

(Oct. 6, 2016), http://www.flgov.com/2016/10/06/gov-scott-issues-updates-

on-hurricane-matthew-preparedness-and-response-efforts-as-storm-impacts-

florida/.

      This natural disaster effectively shut down large swaths of the

state in the last week before the voter registration deadline. The storm thus

effectively precluded Florida residents in these areas from registering to

vote. Governor Scott ordered Florida residents to evacuate from their

counties of residence and to remain indoors and off the roads. These orders,

while certainly necessary for public safety, effectively prevented Florida

residents from registering to vote in person. And, even if individuals

violated these orders, it was highly improbable that any office permitted to

accept voter registrations would even have been open. And, due to

widespread and still-ongoing power outages, prospective voters may not

have been able to even access, download, and print the registration forms to

be mailed. In sum, as this court has already acknowledged, Hurricane

Matthew "foreclosed the only methods of registering to vote: in person or by

mail." Order Granting T.R.O. at 10, *Florida Dem. Party* v. *Scott*, No. 4:16-cv-00626.

LWVF is one of the oldest voter registration organizations working in the state. It has a long history of nonpartisan voter registration through its local chapters. It also has a history of seeking to enforce the NVRA on behalf of itself and its members, particularly when violations prevent it from registering voters. Hurricane Matthew forced approximately 15 of LWVF's 31 chapters to cancel voter registration drives on or after October 6. The League had to cancel drives in Broward, Miami-Dade, Orange, and Palm Beach Counties—four of the five most populous counties in the state. Many local leagues had to cancel drives through Saturday, October 8, and at least four leagues—Brevard, Flagler, Jacksonville/First Coast, and Volusia—still have not been able to resume voter registration activities, as their areas are still without power, internet access, postal service and are still inundated with floodwaters.

When registration efforts did resume, the impact of lost time was clear. When the Orange County League was finally able to resume voter registration for a few hours on Saturday, October 8, they encountered long lines of people wishing to register. These included young women, minorities, and other communities the League seeks to register. Although

the League was able to register many voters in this short time window, the

volume of registration underscored the lost opportunities on Thursday,

Friday, and the remainder of Saturday—not to mention other areas of the

state in which registration activities still have not resumed.

On October 7, 2016, recognizing the significant and irreparable

burden imposed on prospective voters by the aftermath of Hurricane

Matthew, Plaintiff asked the state of Florida and Governor Scott to extend

the voter registration deadline.  In that letter, Plaintiff noted the devastating

impact of Hurricane Matthew on all voters, and that Governor Nikki Haley

of neighboring South Carolina had extended that state's registration deadline

as a result of the storm. Yet, despite repeatedly acknowledging the

unprecedented and severe impact of the storm, Governor Scott nonetheless

refused to extend the voter registration deadline.  *See* Reena Flores, *Rick*

*Scott Won't Extend Florida Voter Registration Because of Hurricane*, CBS

News (Oct. 7, 2016), http://www.cbsnews.com/news/rick-scott-wont-extend-

florida-voter-registration-because-of-hurricane/.  Governor Scott suggested

that the additional time was not necessary because "everybody's had a lot of

time to register."  *Id*.  These actions are particularly troubling given that

Florida has a history of taking steps that limit its citizens' abilities to register

to vote.  *See generally League of Women Voters of Florida* v. *Browning*, No. 11-628 (May 31, 2012) (order granting a preliminary injunction).

An unregistered voter cannot vote.  Defendants' refusal to extend the voter registration deadline will disenfranchise significant numbers of eligible Florida voters.  Those eligible voters who cannot register in time cannot vote in the November 8, 2016 presidential election.

The impact of this disenfranchisement is significant.  Historical data affirms, and this court has recognized, that large numbers of Florida residents register to vote in the week leading up to the registration deadline. Registrations submitted in Florida in the week leading up to book closing typically account for 13 to 20 percent of new registrations in presidential years, according to a 2008 analysis.  *See* McDonald Decl. 5-6, *League of Women Voters* v. *Browning*, 575 F. Supp. 2d 1298 (S.D. Fl. 2008), *available at* http://www.brennancenter.org/sites/default/files/legacy/Democracy/Florid aLOWVvBrowning%20-%2006-06-08%20Expert%20Declaration%20of%20Michael %20McDonald.pdf.  In 2012, 181,319 registrations were submitted in October—more than 20 percent of new registrations that year.  Estimates in 2012 indicate that 156,306 persons registered the last nine days of the registration period— amounting to approximately 18 percent of new registrations.  *See* Fla. Dep't

of St., Div. of Elections, Bookclosing Reports – Regular,

http://dos.myflorida.com/media/693854/gen2012_countyparty.pdf; Voter

Registration Monthly Reports, http://dos.myflorida.com/elections/data-

statistics/voter-registration-statistics/voter-registration-monthly-reports/.  Put

another way, over 18% of all new Floridian voters in 2012 registered in the

nine days before the deadline.  Voter registrations during this period in 2012

were 3% higher than in the entire month of September, nearly 63% higher

than in the month of August, and 213% higher than the monthly average for

the preceding eight months.  These voters tend to be younger; first-time

voters; minorities; and the newly naturalized.

As just one example, Lilly Paez, a 28-year-old resident of Coral

Gables who has lived legally in the United States since she left her native

Costa Rica 14 years ago, was scheduled to be naturalized on October 8,

2016.  Paez Decl. 8-9.  Ms. Paez began the process of becoming a U.S.

citizen earlier this year, specifically so that she would be eligible to vote in

the November 2016 election.  *Id.* at 10.   Her intention was to register to vote

immediately after being sworn in on October 8.  *Id*.  Due to Hurricane

Matthew, her naturalization ceremony was postponed by a full week and,

thus, even if Ms. Paez registers to vote immediately after she is sworn-in,

unless the registration deadline is extended, she will now be unable to vote in the upcoming election.  *Id.*

In addition to the ceremony that Ms. Paez was scheduled to attend, the League is aware of at least four naturalization ceremonies that had been scheduled for October 7 and 8 that were canceled because of Hurricane Matthew.  In two of those locations, the next ceremonies currently scheduled are for dates later than October 12—past the current deadline. Each naturalization ceremony could result in hundreds of new citizens being sworn in and potentially hundreds of new voters then registered.  The State's refusal to extend the deadline has real consequences for these hundreds of people who could have registered to vote before the deadline but because of Hurricane Matthew, cannot.

The disenfranchisement caused by the storm is not theoretical. The League is aware of at least three other naturalization ceremonies that were canceled because of Hurricane Matthew.  The League is aware of at least four ceremonies scheduled for October 7 and 8 that were postponed because of Hurricane Matthew.  Goodman Decl. at ¶ 20.  In two of these locations, the ceremonies have been rescheduled for dates later than October 12, but before October 18.  *Id.*  Unless the deadline is extended, Ms. Paez and potentially hundreds of other new citizens (plus tens of thousands of

other Floridians who intended to register in the days leading up to the deadline) will be denied the right to vote.

## III.   ARGUMENT

### A.   Preliminary Injunction Standard

A party seeking a preliminary injunction under Federal Rule of Civil Procedure 65 must show "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.org* v. *U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). *See also Forsyth Cnty.* v. *U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel* v. *LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*)). Plaintiff here has satisfied each of these requirements; indeed, this Court has already ruled that the last three requirements are met. Order Granting T.R.O. at 12-14, *Florida Dem. Party* v. *Scott*, No. 4:16-cv-00626. An injunction is therefore fully warranted.

### B.   Plaintiff is Likely to Succeed on the Merits of Its Claims.

In granting a Temporary Restraining Order and ordering extension of the voter registration deadline to October 12, 2016, this Court already recognized that Plaintiff has a likelihood of success on its

constitutional claims.  Order Granting T.R.O. at 12-14, *Florida Democratic Party* v. *Scott*, No. 4:16-cv-00626.  Accordingly, this memorandum focuses on the likelihood of success on Plaintiff's additional claim under the NVRA.

Plaintiff is also likely to succeed on its claim that Defendants' decision not to extend the voter registration deadline violates the NVRA.  Specifically, section 8 of the NVRA requires states to process any voter registration form received or postmarked no later than the lesser of 30 days before an election or a period set by state law.  52 U.S.C. § 20507(a)(1).  Each State is required to:

> ensure that any eligible applicant is registered to vote in an election – (A) in the case of registration with a motor vehicle . . . if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election; (B) in the case of registration by mail . . . if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and (C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election[.]

*Id*.

Refusing to extend the voter registration deadline in the face of a natural disaster that effectively stripped tens of thousands of aspiring voters of their opportunity to register to vote during four crucial days

violates this provision.  As this Court has already recognized, Hurricane

Matthew effectively foreclosed the ability to register to vote for at least four

days, including a weekend.  The next available day, October 10, was a

federal holiday, and thus also not a viable option for voters to register.

Governor Scott's assertion that "everybody" had enough time

to register before Hurricane Matthew is disingenuous; the fact is that many

Floridians register in the exact period taken away by the storm.  As the data

from 2012 makes clear, a significant number of Floridians rely on their

legally protected right to register up to 30 days before a presidential election.

Following Governor Scott's logic, a state could theoretically restrict all voter

registration as long as it permitted it on the 30th day before an election—a

ridiculous interpretation that is plainly contrary to the rule that a statute must

be interpreted congruently with its purpose.  *See United States* v. *Louisiana*,

Case No. 3:11-cv-00470-JWD-RLB, 2016 WL 4055648 (M.D. La. Jul. 26,

2016) at *7 ("Congress passed the NVRA so as 'to establish procedures that

will increase the number of eligible citizens who register to vote in elections

for Federal office'").

The NVRA protects the right of eligible voters to register, and

have their registrations be counted—in the entire period for which

registration activity normally occurs—up to 30 days before an election.  Yet,

across large swaths of Florida, eligible voters who planned to register during the past week, whether in person or by mail, were unable to do so due to circumstances far beyond their control.  For at least five days, it was virtually impossible for Floridians along the Matthew-battered coast to register to vote during the statutorily-entitled timeframe.  Florida cannot disenfranchise voters who relied on the right, protected by federal law, to register up to 30 days before the presidential election simply because a sudden and unexpected natural disaster made doing so impossible. Extending the deadline and permitting these voters to register as planned is the only way for Florida to comply with the NVRA.

Moreover, refusing to extend the deadline is inconsistent with the very purpose of the NVRA, which is, unequivocally, to expand the franchise—to "increase the number of eligible citizens who register to vote in elections" and "to enhance[] the participation  of eligible citizens as voters."  52 U.S.C. § 20501.  The NVRA was enacted "to ensure that no American is denied the ability to participate in Federal elections because of real or artificial barriers … [and] to make voter registration an inclusive, rather than an exclusive opportunity in the United States."  139 Cong. Rec. H495-04 (1993) (statement of Rep. Martin Frost).

The NVRA was particularly concerned with addressing and mitigating barriers to registration. Its Senate sponsors acknowledged that "[w]hile most contributing factors may not be affected by legislation, one—difficulties encountered by some who desire to register to vote—is susceptible to correction by legislation." S. Rep. 103-6, at 2 (1993). Similarly, House members recognized that "[t]he unfinished business of registration reform is to reduce these obstacles to voting to the absolute minimum while maintaining the integrity of the electoral process." H.R. Rep. 103-9, at 3 (1993). In contrast, denying the request to extend the registration deadline thwarts Congress's purpose in passing the NVRA: to "increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501. Refusing to extend the deadline constitutes exactly the type of artificial barrier that the NVRA was designed to protect against.

Plaintiff is likely to succeed on its NVRA claim—in addition to its other claims—and an injunction should therefore be issued.

C.   Plaintiff Meets All Other Requirements of An Injunction

As this Court has already recognized, Plaintiff meets all other requirements for an injunction. Order Granting T.R.O. at 12-14, *Florida Democratic Party* v. *Scott,* No. 4:16-cv-00626.

First, there can be no doubt that Plaintiff will suffer irreparable harm unless the Court grants emergency relief.  If voters are denied the ability to register to vote, there is no way to later cure that disenfranchisement.  *Id.* at 12.  Indeed, as this Court noted, "if aspiring eligible Florida voters are barred from registering to vote then those voters are stripped of one of our most precious freedoms.  This isn't golf: there are no mulligans."  *Id*. at 13.

Second, the balance of hardships clearly falls in Plaintiff's favor.  If the deadline is not extended, tens of thousands of voters in Florida risk disenfranchisement.  It is, on the other hand, difficult to imagine what burdens Defendants would suffer from extending the deadline, other than certain administrative burdens.  That is simply not enough.  *See Taylor* v. *Louisiana*, 419 U.S. 522, 535 (1975) ("administrative convenience" cannot justify the deprivation of a constitutional right).  Indeed, as this Court recognized, "[o]ther states ravished by Hurricane Matthew extended their registration deadline to protect voters."  Order Granting T.R.O. at 13, *Florida Democratic Party* v. *Scott*,  No. 4:16-cv-00626.  And, even more states permit far more expansive voter registration, including same-day voter registration on election day.  *Id*. at 14.  Defendants have offered absolutely

no credible justification for their refusal to extend the registration deadline by a single week.

Finally, it cannot be debated that ensuring that eligible voters have a fair opportunity to register so that they can ultimately "exercise their constitutional right to vote . . . promotes the public interest." *Id.* at 14. Accordingly, as this Court already held, granting an "injunction [in this case] is undoubtedly in the public interest." *Id.*

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court enter a preliminary injunction requiring Defendants, their officers, employees, and agents, all persons acting in active concert or participation with the Defendants, or under any Defendants' supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, to extend the voter registration deadline from October 11 to October 18 to account for the lost days and weekend of voter registration. Plaintiff also respectfully requests to be heard on this motion, at the same time that the related case of *Florida Democratic Party* v. *Scott*, No. 4:16-cv-00626 will be heard on Wednesday, October 12, 2016.

Dated: October 11, 2016

_/s/  Farrah R. Berse_

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Robert A. Atkins
N.Y. Bar No. 2210771
Farrah R. Berse
N.Y. Bar No. 4129706
1285 Avenue of the Americas
New York, New York 10019-6064
Tel. 212-373-3000
Fax 212-757-3990

**BRENNAN CENTER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF LAW**
Wendy R. Weiser
N.Y. Bar No. 4415303
Myrna Pérez
Texas Bar No. 24041676
161 Avenue of the Americas, 12th Floor
New York, New York 10013-1205
Tel. 646-292-8310
Fax 212-463-7308

_Counsel for Plaintiff_

## **CERTIFICATE OF**
## **SERVICE**


    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via electronic mail;

- David Fugett, Counsel for The Secretary of State, david.fugett@dos.myflorida.com,
- William Spicola, General Counsel for Governor, Rick Scott, william.spicola@eog.myflorida.com


                    */s/*  Farrah R. Berse            
                    **Farrah R. Berse**